MADDOX, Justice
(dissenting).
I respectfully dissent. I believe that the amount apportioned to the lessee, Shell Oil Company, was inadequate, and that it does not fairly represent the difference between the fair and reasonable market value of the unexpired portion of the lease and the amount of rent which Shell would have had to pay during the unexpired portion of the lease, as of the time of the taking.
It is undisputed that the lessee was entitled to remove the building within sixty days after the expiration of the lease. Therefore, the lessee should be entitled to be compensated for the value of this building taken by the condemning authority. U. S. v. Seagren, 60 App.D.C. 183, 50 F.2d 333 (1931).
“If, as against the lessor, the lessee has the right, prior to or upon the expiration of his term, to remove fixtures, structures, or other improvements installed or erected by him upon the property taken, he is, generally speaking, entitled to be compensated for such improvements.” 27 Am.Jur.2d Eminent Domain § 292, p. 100 (1966). Accord., Annot. 3 ALR 2d 286 (1949); 4 Nichols, Eminent Domain, § 13.121[1] (1977).
By taking the building, the condemning authority has abridged the right of the les *298 see Shell to remove the building at any time; or upon the expiration of the lease, to sell it to the fee owner or new lessee. Thus, it is the lessee, not the lessor, who has been damaged and who should be awarded the value of the building. The record shows that the building was valued at $64,000 and this amount was included in the $400,000 consent award. Obviously, the lessee is entitled to at least the value of the building which was included in the condemnation award.
In this case, the trial court placed the fair market value of the lessee’s interest at $20,-000 (including the value of the building). The majority’s attempt to uphold the inadequacy of the award to the lessee is bottomed on the theory that the trial judge came to a correct conclusion by using the wrong method. It is obvious from the trial court’s decree that he allowed the lessees nothing for their building (valued at $64,-000) because “over a period of twenty-seven years, the value of the improvements would be substantially, if not completely, depreciated). He obviously determines that the fair market value of the lease is $20,000. This value for the leasehold, in my opinion, is grossly inadequate. The condemnation award was $400,000. Although this was a consent award, there is $400,000 which the public pays and which stands in the stead of the pi’operty. It is this amount which is to be apportioned, not some theoretical amount. The trial court permitted experts to testify at the apportionment hearing that the fair market value of the property was between $180,000 and $240,000. This was completely improper, in my opinion. The public is paying $400,000 for the property. For the purposes of apportionment between lessor and lessee, the actual award, whether by a jury verdict or by consent, is the amount to be apportioned, not some theoretical amount. As was said in City of Dothan v. Wilkes, 269 Ala. 444, 114 So.2d 237 (1959):
“In State ex rel. McCaskill v. Hall, 325 Mo. 165, 28 S.W.2d 80, 81, 69 A.L.R. 1256, the Missouri court cited as a general rule the following, which is taken from Lewis on Eminent Domain:
“ ‘ “When there are different interests or estates in the property, the proper course is to ascertain the entire compensation as though the property belonged to one person and then apportion this sum among the different parties according to their respective rights. The value of property can not be enhanced by any distribution of the title or estate among different persons or by any contract arrangements among the owners of different interests. Whatever advantage is secured to one interest must be taken from another, and the sum of all the parts cannot exceed the whole.” 2 Lewis on Eminent Domain (3d Ed.) § 716, p. 1253.’
“The same rule is laid down in 4 Nichols, The Law of Eminent Domain, 3d Ed., § 12.36[1], as follows:
“ ‘It was formerly looked upon as one of the most firmly established principles of law of eminent domain, and it is still the law in the usual case, that when a tract of land is taken by eminent domain, as the land itself is taken by a paramount title rather than the separate estates of different persons having interests in the land, the compensation awarded is for the land itself, and not for the sum of the different interests therein. The duty of the public to make payment for the property which it has taken is not, it- is said, affected by the nature of the title or by the diversity of interests in the property. The public pays what the land is worth, and lets the amount so paid be divided among the various claimants, according to the nature of their respective estates. The rule was expressed in the following language:
“ ‘ “No contracts between the owners of different interests in the land can affect the right of the government to take the land for the public use, or oblige it to pay by way of compensation more than the entire value of the land as a whole.” ’ ” (Emphasis added.)
Can the lessor take the value paid to him by the public and apportion at a different value? I think not. The $400,000 award is *299 the value of all the interests in the land, and the apportionment among the intérests should be made on that value, certainly in the absence of fraud or collusion.
The lessee Shell claims that the economic rent should be 10% times the condemnation award. I do not agree with that premise, because that would mean that the lessee would have been entitled to an economic rent of $40,000 per year, and the lessee would get an excessive windfall. Nevertheless, I would say that the economic rent, should never be less than the legal rate of interest times the condemnation award, which would have been $24,000 (6% X $400,000). As I said, the award stands in the stead of the property.
I cite another example that the award to the lessee here was inadequate. In awarding damages, it is proper to consider the highest and best use to which the property could be put. Sayers v. Mobile, 276 Ala. 589, 165 So.2d 371 (1964). Expert testimony established that the highest and best use of this property would be the rental of parking spaces. The experts testified that between 160 and 189 cars could be parked on this area. With the going rate of $15.00 per month, the rental of this property for parking would be worth between $28,800 and $34,020.
I would reverse and remand with instructions to the trial court to make a new determination on value.
I am clear to the conclusion that the lessee was entitled to at least that part of the condemnation award which represented the value of the building, not because the building added to the value of the leasehold, but because the building belonged to the lessee, and its value entered into the value of that which was taken.